IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **KENNETH TYSON JOHNSTON** | **PLAINTIFF** |
| v. | Case No. 26-cv-119 |
| **ASHLEY FURNITURE INDUSTRIES LLC; ASHLEY GLOBAL RETAIL LLC; ASHLEY DISTRIBUTION SERVICES LTD; ASHLEY DISTRIBUTION SERVICES LLC; ASHLEY HOMESTORES LTD; JAMES MICHAEL HILL; STEVEN RALSTON; ACE AMERICAN INSURANCE COMPANY, and CHUBB INDEMNITY INSURANCE COMPANY** | **DEFENDANTS** |

### NOTICE OF REMOVAL OF ASHLEY DISTRIBUTION SERVICES LLC

TO:  THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WISCONSIN

>   Honorable Jeff Ozaki
>   Clerk of the Circuit Court of Dane County, Wisconsin
>   Dane County Courthouse
>   Room 1000
>   215 S. Hamilton Street
>   Madison, Wisconsin 53703
>
>   Christopher D. Stombaugh – Wis. Bar No. 1022065
>   Michigan Auto Law PLLC
>   P.O. Box 437
>   Platteville, Wisconsin 53818
>   (608) 778-3314
>   cstombaugh@michiganautolaw.com
>
>   Baskin L. Jones – Miss. Bar No. 103589
>   Jones Law Group PA
>   3417 State Street
>   Jackson, Mississippi 39216
>   (601) 272-2406
>   baskinjones@gmail.com
>   *Not licensed or admitted in Wisconsin

{D2542771.1}

PLEASE TAKE NOTICE that Defendant Ashley Furniture Industries, LLC, on behalf of itself and Defendant Ashley Distribution Ltd. (collectively, "ADS"), by and through its undersigned counsel, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, hereby give notice of the removal of this civil action from the Circuit Court of Dane County, Wisconsin, to the United States District Court for the Western District of Wisconsin, which is the "district court of the United States for the district and division embracing the place where such action is pending" within the meaning of 28 U.S.C. § 1441(a).  See 28 U.S.C. § 104(a)(2).

As grounds for this removal, ADS states as follows:

## I.     BACKGROUND

1. ADS is a Florida company. It hired Defendant James Hill, who is an Alabama driver. On January 15, 2024, Hill was in a motor-vehicle accident near Carthage, Leake County, Mississippi with Johnston, a Mississippi resident.

2. At the time of the accident, Hill was operating a 2019 Black Volvo 18-wheeler tractor owned and operated by ADS, and within the course and scope of his employment with ADS. On that day, Hill picked up an empty trailer in Dothan, Alabama, picked up a load of farm feed in Montgomery, Alabama, which he delivered to a co-op in Walnut Grove, Mississippi. Hill was en route to Ecru, Mississippi at the time of the accident to drop his empty trailer before terminating his shift that day and returning the next morning to his home in Slocumb, Alabama.

3. On January 14, 2026, Johnston commenced a civil action against Defendants in the Circuit Court of Dane County, Wisconsin, Case No. 2026CV000145. Johnston's Complaint alleges claims arising from that motor vehicle accident.

{D2542771.1}

4. ADS was served with a copy of the Summons and Complaint on February 6, 2026. A true and correct copy of all process, pleadings, and orders served in the state court action is attached hereto as Exhibit "P."

## II.    BASIS FOR REMOVAL

5. Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants. . . ."

6. Under 28 U.S.C. § 1332(a)(1), district courts of the United States "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States. . . ."

7. This is such an action because (a) there is complete diversity of citizenship between Plaintiff and all Defendants, and (b) the amount in controversy exceeds $75,000, exclusive of interest and costs, *see* 28 U.S.C. § 1446 (c)(2)(A)-(B).

8. Removal is proper because the only named Defendant in this action who is a citizen of the forum state is not "properly joined" as required to invoke 28 U.S.C. § 1441 (b)(2).

   A.    **The Requirement of Complete Diversity of Citizenship is met.**

9. Plaintiff is a citizen of the State of Mississippi.

10. Defendant Ashley Distribution Services LLC (ADS LLC) is a limited liability company organized under the laws of the State of Florida with its principal place of business located at 1670 East 8th Avenue, Tampa, Florida 33605. *See* Ex. "A," 2025 Application to Register Foreign LLC (filed with Miss. Sec. of State). The sole member of Ashley Distribution Services LLC is Ashley Distribution Services Holdings, Inc. (ADS Holdings Inc.), which

{D2542771.1}

is a Florida corporation with its principal place of business located at 1670 East 8th Avenue, Tampa, Florida 33605. *See* Ex. "B," Articles of Conversion for ADS LLC (filed with Fla. Sec. of State); Ex. "C" ADS Holdings Inc. 2025 Annual Report. Thus, ADS LLC is a diverse party.

11. Defendant Ashley Distribution Services Ltd. was a Wisconsin corporation first organized on November 8, 1993, and converted to Ashley Distribution Services Inc. (ADS Inc.) effective December 31, 2024, at which time Ashley Distribution Services Ltd. ceased to exist. *See* Ex. "D," Ashley Distribution Services Ltd. Articles of Conversion (filed with Wis. Sec. of State). Thus, what formerly operated as Ashley Distribution Services, Ltd., became ADS Inc., a Florida corporation with its principal place of business located at 1670 East 8th Avenue, Tampa, Florida 33605. *See* Ex. "E," ADS Inc. Articles of Conversion. Effective February 5, 2025, ADS Inc. became Ashley Distribution Services, LLC ("ADS LLC"), a Florida limited liability company with its principal place of business located at 1670 8th Avenue, Tampa, Florida 33605.[1] As noted above, the sole member of ADS LLC is ADS Holdings Inc., which is a Florida corporation with its principal place of business located at 1670 East 8th Avenue, Tampa, Florida 33605, and a diverse party.[2]

12. Defendant Ashley Furniture Industries, LLC (AFI LLC) is a Florida limited liability company with its principal office located at 1670 East 8th Avenue, Tampa, Florida. *See* Ex. "F" (p.6), AFI LLC's Articles of Conversion and Incorporation. The sole member of AFI LLC is Ashley Holdings FL Inc. *See* Ex. "G," AFI LLC 2025 Annual Report (filed

---

[1] Another entity, Ashley Pacific Northwest, LLC, a Delaware company, was merged into ADS Ltd. effective October 29, 2024. *See* Ex. "K," Articles of Merger – Ashley Pacific Northwest LLC (filed with Wis. Sec. of State). Ashley Pacific Northwest LLC ceased to exist after that date. The former Ashley Pacific Northwest LLC is now also included in the surviving ADS LLC.

[2] ADS maintains that Ashley Distribution Services Ltd. is an improperly joined defendant because it is duplicative of ADS LLC, which will be addressed by separate motion.

{D2542771.1}

with the Miss. Sec. of State). Ashley Holdings FL Inc. is a Florida corporation with its principal office also located at 1670 East 8th Avenue, Tampa, Florida. *See* Ex. "H," Ashley Holdings FL Inc. Articles of Conversion and Incorporation (filed with the Fla. Sec. of State). Thus, AFI LLC is a diverse party.[3]

13. Defendant Ashley Global Retail LLC (AGR LLC) is a Delaware limited liability company with its principal office located at 1670 East 8th Avenue, Tampa, Florida 33605. *See* Ex "I-1," AGR LLC 2025 Annual Report (filed with the Fla. Sec. of State); Ex. "I-2," AGR LLC 2016 Application to Transact Business in Florida (filed with the Fla. Sec. of State). The sole member of AGR LLC is Ashley Holdings FL Inc. *See* Ex. "I-1;" Ex. "L," Amicone Declaration (¶7). As noted above, Ashley Holdings FL Inc. is a Florida corporation with its principal office located at 1670 East 8th Avenue, Tampa, Florida. Thus, AGR LLC is a diverse party.[4]

14. Defendant Ashley Homestores, Ltd., was formed as a Wisconsin corporation on September 15, 1997. However, it was converted to Ashley Homestores, Inc., effective December 31, 2024, at which time, Ashley Homestores Ltd. ceased to exist. *See* Ex. "J," Articles of Conversion (filed with Fla. Sec. of State). Ashley Homestores Inc. is a Florida corporation with its principal place of business located at 1670 East 8th Avenue, Tampa, Florida 33605. *Id*. Thus, Ashley Homestores Ltd. is a diverse party.[5]

---

[3] However, ADS maintains that AFI LLC is an improperly joined defendant. While its citizenship should ultimately be ignored, it does not adversely impact this Removal. AFI LLC's improper joinder will be addressed by separate motion.

[4] However, ADS maintains that AGR LLC is an improperly joined defendant. While its citizenship should ultimately be ignored, it does not adversely impact this Removal. AGR LLC's improper joinder will be addressed by separate motion.

[5] However, ADS maintains that Ashley Homestores Ltd. (AH) is an improperly joined defendant. However, its citizenship does not adversely impact this Removal. Thus, AH's improper joinder will be addressed by separate motion.

{D2542771.1}

15. Johnston alleges, and ADS asserts, that Defendant James Michael Hill is a citizen of Alabama. Thus, Hill is a diverse party.

16. Johnston alleges, and ADS asserts, that Defendant ACE American Insurance Company is a Pennsylvania corporation with its principal place of business located at 436 Walnut Street, Philadelphia, Pennsylvania 19106. Thus, ACE is a diverse party.[6]

17. Johnston alleges, and ADS asserts, that Defendant Chubb Indemnity Insurance Company is a New York corporation with its principal place of business in New Jersey. Thus, Chubb is a diverse party.[7]

18. Johnston alleges, and ADS does not contest, that Defendant Steven Ralston is a citizen of Wisconsin. Thus, Ralston is a diverse party.[8]

19. In light of the foregoing, none of the Defendants is a citizen of the same state as any of the Plaintiffs, *see* 28 U.S.C. § 1441 (b)(2), and therefore complete diversity of citizenship exists between all Plaintiffs and all such Defendants under 28 U.S.C. § 1332(a).

20. "[I]n certain contexts," Courts are "require[d] . . . to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 174 (2014). One example: "a plaintiff may not keep a case out of federal court by fraudulently naming a nondiverse defendant." *Id*.

21. Defendant Steven Ralston, while a Wisconsin citizen, is an improperly joined defendant whose citizenship must be disregarded for purposes of this Notice of Removal. *See Schur*

---

[6] ADS asserts that ACE is an improperly joined defendant. However, its citizenship does not adversely impact this Removal. Thus, Ace's improper joinder will be addressed by separate motion.
[7] ADS asserts that Chubb is an improperly joined defendant. However, its citizenship does not adversely impact this Removal. Thus, Chubb's improper joinder will be addressed by separate motion.
[8] ADS maintains that Ralston is also an improperly joined defendant. However, Ralston's citizenship does not impact this Court's diversity jurisdiction under 28 U.S.C. § 1332 because he is diverse from the sole plaintiff in this action, who is a citizen of Mississippi. Thus, his improper joinder is addressed below, explaining the propriety of removing this diversity case under 28 U.S.C. § 1441.

{D2542771.1}

*v. L.A. Weight Loss Ctrs. Inc.*, 577 F.3d 752, 763 (7th Cir. 2009); *see also Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999). As explained in more detail below, Ralston is improperly joined in this lawsuit because Johnston failed to state a claim against him upon which relief can be granted. More specifically, Ralston had no personal involvement in any facet of the accident that is the subject of this case that could give rise to his individual liability.

> i. *The "forum defendant rule" does not apply to preclude removal of this diversity case because Ralston is not a properly joined defendant.*

22. Where, as here, a civil action "of which the district courts of the United States have original jurisdiction" is originally brought in a State court, the defendant(s) may remove the action "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441 (a).

23. Congress created an exception to this right of removal in 28 U.S.C. § 1441 (b)(2), also known as the "forum defendant rule," which precludes removal when (a) the federal jurisdiction over the action is based on diversity of citizenship, and (b) "any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

24. The forum defendant rule does not apply in this action because Ralston, the only Defendant who is a citizen of the forum state, is not properly joined.

25. Improper joinder is demonstrated by showing that (1) the plaintiff misstated jurisdictional facts (such as the citizenship of the parties), or (2) the claim against the defendant "is simply too weak to prevent the exercise of federal jurisdiction." *Gibson v. Sunbelt Rentals Inc.*, Civ. Action No. 21-cv-808-JDP, 2022 WL 2713408 at *2, (W.D. Wis. July 13, 2022) (J. Peterson) (citing *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011); *Poulos v.*

{D2542771.1}

*Naas Foods Inc.*, 959 F.2d 69, 73 (7th Cir., 1992); *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)); *see also Stampfli v. PACCAR Inc.*, Civ. Action No. 17-cv-751-WMC, 2018 WL 2298356 at *4 (W.D. Wis. May 21, 2018) (J. Conley) ("Typically, [improper] joinder 'involves a claim against an in-state defendant that simply has no chance of success, [regardless of] the plaintiff's motives.'") (second bracket in the original) (*quoting Poulos*, supra at 73-74). Here, Johnston's claims against Ralston are the latter.

26. ADS bears the burden here of "show[ing] that, after resolving all issues of fact <u>and law</u> in favor of [Johnston], [Johnston] cannot establish a cause of action against [Ralston]." *Stampfli* at *4 (emphasis in the original). In analyzing whether joinder is improper, "the court may look beyond the complaint." *Id*. (citing *Faucett v. Ingersoll-Rand Min. & Machinery Co.*, 960 F.2d 653, 655 (7th Cir. 1992)).

27. "[The in-state defendant]'s uncontradicted affidavit, essentially stating that he has had absolutely nothing to do with [the events giving rise to the action], is sufficient to establish fraudulent joinder." *Id*. at 655.

28. Ralston's affidavit, refuting the allegations against him and explaining that he has had nothing to do with the events underlying this suit, is attached hereto as Exhibit "M."

   ii. *Under Wisconsin law, Ralston cannot be held liable simply by virtue of his position with ADS.*

29. As a preliminary matter, Wisconsin law[9] holds that "[t]he duty of any person is the obligation of due care to refrain from any act which will cause foreseeable harm to others

---

[9] ADS maintains that Wisconsin courts following Wisconsin choice of law rules would apply Mississippi substantive law to this claim. That determination, however, is not necessary for the purposes of this removal. The relevant question here, whether Plaintiff's claims against Ralston have any chance of success, would yield the same answer if analyzed under the substantive law of Mississippi as it would under the substantive law of Wisconsin. *See, e.g.*, *Turner v. Wilson*, 620 So. 2d 545, 548 (Miss. 1993) ("Mississippi follows the general rule that individual liability of corporate **officers** or directors may not be predicated merely on their connection to the corporation but must have as their foundation individual wrongdoing.").

{D2542771.1}

even though the nature of that harm and the identity of the harmed person or harmed interest is unknown at the time of the act ...." *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 238 (Wis. 1998) (Where the State of Wisconsin first recognized a tort for "negligent hiring, training, [and] supervision.") "A defendant's duty is established when it can be said that it was foreseeable that his act or omission to act may cause harm to someone." *Id*.

30. Put simply, and perhaps obviously, an individual's duty to the world is to refrain from harming others through his <u>own</u> acts or omissions.

31. Likewise, a corporate agent "may be liable for [his own] non-intentional torts committed in the scope of his employment." *Casper v. Am. Int'l S. Ins. Co.,* 800 N.W.2d 880 (¶9) (Wis. 2011); *see also Garrett v. Ocean View Swimming Pool Servs., LLC,* 18 N.W.3d 168, 170 (Wis. App. 2025) (corporate agents may only be held personally liable "if a fact finder finds that they engaged in tortious conduct"); *accord, Ferris v. Location 3 Corp.*, 804 N.W.2d 822 (¶16) (Wis. App. 2011).

32. By way of background, *Casper* was a trucking case where the plaintiffs sought to hold a trucking company's CEO liable for approving the route a negligent driver took when the driver collided with a minivan stopped at an intersection. *Garrett* was a pool case where a homeowner sought to hold the sole member of the pool maintenance company personally liable for improperly draining a pool. *Ferris* was a real estate fraud and conspiracy case where the plaintiffs alleged that the corporate property inspector and its employees were liable for producing a false real estate condition report.

33. All three cases stand for the proposition that a corporate agent can be held liable for his own torts. However, these rulings underscore that personal liability is the exception, not

the rule, and requires tortious conduct by the individual employee. Mere corporate employment, even in management, is not enough.

34. *Casper* is particularly instructive here. There, the Wisconsin Supreme Court explained that even when there is tortious conduct alleged against a corporate officer individually, if the tort is non-intentional (e.g., negligence), certain public policy factors may preclude liability against the individual. 800 N.W.2d 880 (¶ 91)

35. The *Casper* court stated:

Traditionally, the court has identified six public-policy factors that may operate to preclude liability:

> (1) the injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tortfeasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tortfeasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance for recovery would enter a field that has no sensible or just stopping point.

36. The court held that the alleged negligence of the corporate officer, who worked in Ohio, in approving the route the driver took through multiple states (which approval occurred at least a year and half before the accident – *see* (¶97)) was too remote in time to support a negligence claim against him based on an accident that occurred in Wisconsin. *Id*. at ¶94.

37. Ultimately, the *Casper* Court found that the first factor, remoteness from the negligence, "compelling" enough to hold that the CEO could not be held liable. *Id*. "In sum, even if [the corporate officer] approved the route . . . and even if such approval was negligent in light of federal safety regulations, the Caspers' injury is simply too remote to make him personally liable as an individual." *Id*. at ¶ 104.

>> iii. Ralston had no authority over or involvement with any of the ADS activities giving rise to Johnston's claims.

{D2542771.1}

38. Ralston is the safety director for ADS, which places him squarely within ADS's corporate structure, not a direct participant in any alleged negligent conduct. *See* Ex. "M," Ralston Affidavit (¶1). Johnston alleges Ralston had "direct job duties that originated from and ran Ashley safety operations in Wisconsin and nationwide. . . ." Compl. (¶13). Yet, these allegations describe corporate oversight functions, not direct negligent acts related to the accident. The difference is even more stark when compared with "the [alleged] on-road negligence of Driver Hill [that] occurred in Mississippi."Compl. (¶51(d)). Johnston's specific allegations against Ralston magnify the weakness of his claims.

39. While Ralston oversaw development of training regimens and safety operations including reviewing fleet data, created and oversaw safety protocols, and operated as ADS's safety officer, this was at the macro level of a company that employs approximately 1,500 people. *See* Ex. "M," (¶¶4(B)-(C)). Ralston had no direct involvement with Hill including any training or supervision of him, because that is not his job. *Id*.; *see also id*. (¶20). Those direct activities were performed at the regional level which, here, was ADS personnel in Ecru, Mississippi. *Id*., *passim*. Likewise, any weather-related decisions or operational direction is given at the regional level, not in Wisconsin, and that direction comes from fleet and operations management, not safety. *Id*., (¶4(D)) Any "real time" monitoring, administering, and/or guiding of Hill and his vehicle and any related decisions was done is done by ADS's regional managers, not Ralston. *Id*., (¶¶8, 11). Here, that would have been ADS personnel in Ecru, Mississippi. *Id*., *passim*. Ralston does not oversee any of ADS's vehicles or their maintenance, including the one involved in this accident. *Id*., (¶6). Ralston does not participate in hiring, retention, or separation actions in general nor specifically as to Hill. *Id*., (¶¶9, 13, 16-17). Further, Ralston is not involved in any aspect of trips, routes,

assignments, loads, or weather. *Id.*, (¶¶26-27). Again, those are all matters handled at the regional or below level and by operations personnel; here, in Ecru, Mississippi. *Id.*

40. In short, after correcting Johnston's factual miscomprehensions, reality indicates that Ralston's conduct played no causal role in this accident in Mississippi. Ralston's conduct was "too remote" from the events of the subject accident, precluding liability under the first public policy factor. *See Casper*, 800 N.W.2d at 900, ¶94. Additionally, if someone like Ralston could be found negligent and liable, "this allowance for recovery would enter a field that has no sensible or just stopping point," since any person with general responsibilities for safety in a corporation, could be personally liable for car accidents in wintery weather. Ralston's connection to the accident is even more tenuous than that present in *Casper*. As such, public policy factor (6) also precludes finding Ralston liable. Given the facts here, Johnston's claims against Ralston "simply have no chance of success."

41. Disregarding the citizenship of Ralston, who is improperly joined,[10] there is no forum defendant in this action and thus removal is proper under 28 U.S.C. § 1441.

    **B.     The Amount in Controversy is met.**

42. For removal based on diversity jurisdiction to be proper, the "matter in controversy [must exceed] the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

43. If the complaint does not request a specific amount of damages, a defendant must prove by a preponderance of the evidence that the requirement is met. One way that a defendant may satisfy its burden is by showing the Court that it is "facially apparent" from the Complaint that the amount in controversy exceeds the jurisdictional minimum. *See Sykes*

---

[10] Again, ADS maintains that AFI, AGR, AH, Hill, Ace, and Chubb are also improperly joined. However, their joinder does not impact this Removal, and thus will be addressed by separate motion.

{D2542771.1}

v. *Cook Inc.*, 74 F.4th 195, 210 (7th Cir. 2023) (quoting *Brand Servs. LLC v. Irex Corp.*, 909 F.3d 151, 155 (5th Cir. 2018)).

44. Johnston alleges that this accident "caused significant bodily injury, emotional distress, and damages" to him. *Complaint*, pp.17-18, ¶98. Specifically, "Johnston sustained a traumatic brain injury, brain bleed, blunt force trauma to the chest, laceration to his neck and cranium, and is experiencing ongoing cognitive issues with extensive medical treatment." *Id*.

45. Further, on January 24, 2025, ADS received an apparent demand letter itemizing $643,569.02 in past medical expenses as well as an "anticipated" additional $100,000 to $300,000 in additional past medical expenses for which he was awaiting billing. *See* Ex. "N," Ty Johnston Demand.

46. Thus, Johnston's personal injury claim alone exceeds $75,000.00, exclusive of interest and costs. Thus, the minimum amount in controversy is undisputedly satisfied.

47. Because this action is a "civil action brought in a State court of which the district courts of the United States have original jurisdiction" pursuant to 28 U.S.C. § 1441(a), it is properly removable to this Court as a "civil action[] where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . Citizens of different States" within the meaning of 28 U.S.C. § 1332(a).

### III.   ADS HAS SATISFIED THE PROCEDURAL REQUIREMENTS OF THE REMOVAL STATUTES

48. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b), as it is filed within 30 days of receipt of the Summons and Complaint by the last properly joined and served Defendant. More specifically, ADS was served with a copy of the Summons and Complaint on February 6, 2026, and this Notice of Removal is filed within 30 days of February 6,

{D2542771.1}

2026. This Notice of Removal is therefore timely as it was filed within 30 days of receipt of the Summons and Complaint upon this properly joined and served Defendant. 28 U.S.C. § 1446(b). *See also* Ex. O (ADS's acknowledgement of acceptance of service of process).

49. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendants in the state court action are attached hereto as Exhibit P.

50. Pursuant to 28 U.S.C. § 1446(d), ADS will promptly file a copy of this Notice of Removal with the Clerk of the Circuit Court of Dane County, Wisconsin and will serve written notice of the filing of this Notice of Removal on Johnston's counsel.

51. "[T]he consent of improperly served [or joined] defendant[s] is not required for removal. *Eaglestar Intertrade Ltd. v. Dafin Asset Fin. Ltd.*, Case NO. 06-C-953, 2006 U.S. Dist. LEXIS 86176, n.4 (E.D. Wis. Nov. 27, 2006) (J. Greisbach) (citing *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993) ("in cases involving alleged improper or fraudulent joinder of parties, however, application of [the consent] requirement to improperly or fraudulently joined parties would be nonsensical, as removal in those cases is based on the contention that no other proper defendant exists.") (parenthetical quoted in original). Thus, neither the joinder in, or the consent to, this Notice of Removal by the improperly joined Defendants is required for purposes of removal of this action from state court to this Honorable Court. As already explained, any other properly joined and served Defendants have timely joined in this Notice of Removal as required by 28 U.S.C. § 1446. ("When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.").

52. The United States District Court for the Western District of Wisconsin is the proper venue for this action pursuant to 28 U.S.C. §§ 130 and 1441(a), as it is the district and division embracing the place where the state court action is pending.

53. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of ADS's or any other Defendant's rights to assert any defense or affirmative matter available under Wisconsin or Federal Rule of Civil Procedure 12, or any state or federal statute, including but not limited to the following: lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service of process, improper joinder of claims or parties, failure to state a claim upon which relief can be granted, failure to join a necessary party under Rule 19, or abatement of this lawsuit.

### IV.   CONCLUSION

WHEREFORE, Ashley Distribution Services LLC respectfully removes this action from the Circuit Court of Dane County, Wisconsin, to this the United States District Court for the Western District of Wisconsin, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

DATED: February 17, 2026.

Respectfully submitted,

**ASHLEY DISTRIBUTION SERVICES LLC**

BY: /s/ Ann C. Emmerich

Ann C. Emmerich
WI State Bar No. 1018014
aemmerich@bmrlawyers.com
BELL, MOORE & RICHTER, S.C
345 W. Washington Avenue, Suite 302
Madison, WI 53703-3007
Telephone: (608) 257-3764
Facsimile:  (608 )257-3757

{D2542771.1}

        Wilton V. Byars III – MSB #9335
        wbyars@danielcoker.com
        J. Miles Forks – MSB #105080
        mforks@danielcoker.com
        DANIEL COKER HORTON & BELL, PA
        265 North Lamar Blvd., Ste R
        Post Office Box 1396
        Oxford, Mississippi 38655-1396
        Telephone: (662) 232-8979
        Facsimile: (662) 232-8940
        *Pro Hac Vice Pending*

        David A. Dial
        Georgia Bar No. 220329
        ddial@wwhgd.com
        William C. Buhay
        Georgia Bar No. 093940
        wbuhay@wwhgd.com
        WEINBERG WHEELER HUDGINS GUNN & DIAL
        3344 Peachtree Road, NE, Suite 2400
        Atlanta, Georgia 30326
        Telephone: (404) 876-2700
        Facsimile: (404) 875-9433
        *Pro Hac Vice Pending*

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and correct copy of the foregoing Notice of Removal was served via notification through the Electronic Court Filing system and by electronic mail upon:

Christopher D. Stombaugh – Wis. Bar No. 1022065
Michigan Auto Law PLLC
P.O. Box 437
Platteville, Wisconsin 53818
(608) 778-3314
cstombaugh@michiganautolaw.com

{D2542771.1}

Baskin L. Jones – Miss. Bar No. 103589
Jones Law Group PA
3417 State Street
Jackson, Mississippi 39216
(601) 272-2406
baskinjones@gmail.com
*Not licensed or admitted in Wisconsin

                                          By:     /s/ Ann C. Emmerich
                                                         ANN C. EMMERICH