IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KENNETH TYSON JOHNSTON,

Plaintiff,

v.

JAMES MICHAEL HILL, STEVE RALTSON, ASHLEY FURNITURE INDUSTRIES LLC, ASHLEY GLOBAL RETAIL LLC, ASHLEY DISTRIBUTION LTD, ASHLEY DISTRIBUTION SERVICES LLC, ASHLEY HOMESTORES LTD, ACE AMERICAN INSURANCE COMPANY, and CHUBB INDEMNITY INSURANCE COMPANY,

Defendants.

OPINION and ORDER

26-cv-119-jdp

---

This case arises from a motor vehicle crash that occurred in Mississippi involving plaintiff Kenneth Tyson Johnston and defendant James Michael Hill, who was driving a tractor-trailer for defendant Ashley Distribution Services LLC (ADS). Johnston brought suit in state court in Dane County, Wisconsin, asserting state-law negligence claims against Hill, ADS, ADS safety manager Steven Ralston, a variety of other Ashley-associated entities, and two insurance companies. Dkt. 1-18 (state court complaint). Defendants removed to this court, relying on 28 U.S.C. § 1332 as the basis for jurisdiction.

Multiple motions are before the court. Johnston has moved to remand, asserting that defendant Steven Ralston is a citizen of Wisconsin, so the forum-defendant rule, 28 U.S.C. § 1441(b)(2), bars removal. Defendants have moved to dismiss on multiple grounds, including lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2); improper venue, Fed. R. Civ. P. 12(b)(3); insufficient process, Fed. R. Civ. P. 12(b)(4); and failure to state a claim for relief, Fed. R. Civ. P. 12(b)(6).

The court will grant Johnston's motion to remand. It is undisputed that Steven Ralston is a citizen of Wisconsin, so on its face, the forum-defendant rule bars removal. Defendants contend that the rule doesn't apply because Ralston was fraudulently joined to defeat removal. But defendants haven't met their heavy burden to show fraudulent joinder, which requires them to demonstrate that Johnston's claims against Ralston are utterly groundless. This case will be remanded to state court. The remaining motions will be denied as moot.

## ALLEGATIONS OF FACT

The court draws the following facts from the complaint and supporting materials and from the declarations and exhibits that the parties submitted in support of the notice of removal and their respective motions.

In January 2024, plaintiff Kenneth Tyson Johnston was involved in a motor vehicle crash with defendant James Michael Hill, an employee of defendant Ashley Distribution Services LLC (ADS). Hill was driving a tractor-trailer for ADS near Carthage, Mississippi when he lost control of the vehicle on an icy bridge and collided with Johnston's vehicle. Johnston suffered a traumatic brain bleed and other injuries, some of which have affected him permanently.

The parties agree that this court has jurisdiction under 28 U.S.C. § 1332, because the parties are citizens of different states and the amount in controversy is more than $75,000. Plaintiff Johnston is a citizen of Mississippi. Defendant Hill is a citizen of Alabama. The Ashley defendants are all citizens of Florida. Defendant Steven Ralston is a citizen of Wisconsin who worked as ADS's Director of Transportation Safety at the time of the crash.

ANALYSIS

Two sets of motions are before the court. Johnston moves to remand the case to state court, contending that the forum-defendant rule bars removal because defendant Steve Ralston is a citizen of Wisconsin. *See* 28 U.S.C. § 1441(b)(2). Defendants move to dismiss the case, or, alternatively, to transfer it to the Southern District of Mississippi, where the motor vehicle crash occurred. The court concludes that remand is warranted, so it will grant plaintiff's motion and deny defendants' motions as moot.

The forum-defendant rule provides that a civil action otherwise removable on the basis of diversity jurisdiction "may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the state in which such action is brought." 28 U.S.C. § 1441(b)(2). It is undisputed that defendant Steve Ralston is a citizen of Wisconsin, the same state where this action was brought. But defendants say that the court should disregard Ralston's forum-defendant status because Ralston was fraudulently joined for the purpose of defeating removal.

The doctrine of fraudulent joinder acts as an exception to the general rule prohibiting federal jurisdiction over state-law claims when a plaintiff and defendant share state citizenship. *Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). The doctrine allows federal courts to disregard the citizenship of non-diverse defendants, assume jurisdiction, dismiss the non-diverse defendants, and thereby retain jurisdiction. *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 763 (7th Cir. 2009).

A threshold question is whether the doctrine of fraudulent joinder applies when the parties are actually diverse, but only the forum-defendant rule bars removal. So far, the court of appeals has applied the doctrine only in the context of determining whether there is complete

diversity of citizenship, as required to exercise jurisdiction under 28 U.S.C. § 1332. *E.g.*, *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 764–65 (7th Cir. 2015); *Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653, 654–55 (7th Cir. 1992). But Ralston's presence in the case does not destroy diversity jurisdiction; it merely precludes removal as a procedural matter under the forum-defendant rule. *See Morris v. Nuzzo*, 718 F.3d 660, 665 (7th Cir. 2013) (forum-defendant rule is a procedural rule, not a jurisdictional one).

In *Morris*, the court of appeals discussed whether fraudulent joinder acts as an exception to the forum-defendant rule when diversity of citizenship is not at issue. On one hand, the court reasoned that the traditional rationale for removal—concerns of local bias in favor of a resident plaintiff—doesn't exist in that circumstance. *Id.* at 667–68. On the other hand, the removal right is not limited to cases with a risk of local bias, and the court recognized that declining to apply fraudulent joinder in some cases could lead to "troubling inconsistencies and potential loopholes" in the removal right. *Id.* at 669. Ultimately, the court declined to decide whether fraudulent joinder applies to the forum-defendant rule, calling it a "very close question." *Id.* at 670. This court does not need to decide that question either, because even if fraudulent joinder does apply, defendants have not met their burden to show that it applies here.

A removing party bears a "heavy burden" to show that fraudulent joinder applies, which it can meet in two ways. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). First, it can show that the plaintiff misstated jurisdictional facts, such as the citizenship of the parties. *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993). Second, it can show that there is no possibility that the plaintiff could state a cause of action against the in-state defendant in state court. *Id.* Defendants rely on the second method.

This court described the standard for fraudulent joinder in detail in *Gibson v. Sunbelt Rentals, Inc.*, No. 21-cv-808-jdp, 2022 WL 2713408 (W.D. Wis. July 13, 2022), so it will summarize it only briefly here. The key question is whether the plaintiff's claim against the in-state defendant is "utterly groundless," or in other words, whether there is a reasonable chance that the plaintiff could establish a cause of action against the in-state defendant in state court. *Gibson*, 2022 WL 2713408, at *2 (citing *Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir. 1999), and *Walton*, 643 F.3d at 999). In answering this question, the court draws all reasonable inferences of fact and resolves uncertainties of state law in the plaintiff's favor. *Poulos*, 959 F.2d at 73. The court may consider evidence submitted by the plaintiff to supplement the allegations in the complaint. *Gibson*, 2022 WL 2713408, at *2. The court may also consider "uncontroverted summary evidence" submitted by the defendant that establishes that the plaintiff's claims against the in-state defendant are groundless. *Stampfli v. PACCAR, Inc.*, No. 17-cv-751-wmc, 2018 WL 2298356, at *4 (W.D. Wis. May 21, 2018); *see also Faucett*, 960 F.2d at 655.

Johnston asserts negligence claims against Ralston under Wisconsin law. Dkt. 1-18. Courts have adopted liberal pleading requirements for negligence claims, recognizing that the relevant information is often in the exclusive possession of the defendant. *Bausch v. Stryker Corp.*, 630 F.3d 546, 560 (7th Cir. 2010). The plaintiff must plead facts sufficient to raise his claim above the level of speculation. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶ 30, 356 Wis. 2d 665, 680, 849 N.W.2d 693, 701 ("*Twombly* is consistent with our precedent."). But he does not need to identify specific evidence or even to explain exactly how the defendant was negligent. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1084–85 (7th Cir. 2008) (noting that an allegation that

"the defendant, on a specified date, negligently drove a motor vehicle against [the] plaintiff who was then crossing an identified highway" is sufficient to state a claim).

The allegations in Johnston's complaint are sufficient on their face to state a negligence claim against Ralston. Johnston's theory is that Ralston performed his duties as ADS's Director of Transportation Safety in a deficient manner, which ultimately contributed to the motor vehicle crash at issue in this case. Johnston's allegations of deficient job performance fall into two categories. First, Johnston asserts that Ralston was directly involved in the events leading to the crash. He says that Ralston trained Hill and knew that he was an unsafe driver but decided to let him drive ADS vehicles anyway. And he says that Johnston knew that weather conditions in Mississippi on the day of the crash were unsafe for driving but decided not to pull drivers off the road. Second, Johnson asserts that Ralston failed to develop safety policies for ADS that might have prevented the crash. He says that Ralston was responsible for developing policies related to driver training, truck maintenance, and weather safety. Nevertheless, ADS lacked "adequate training programs regarding hazardous driving conditions," because defendant Hill "should have been trained to depart the road or reduce speed to safely travel with black ice present." Dkt. 1-18, ¶¶ 72, 102. These allegations about Ralston's job performance are sufficient to raise Johnston's negligence claims against Ralston above the level of speculation.

Defendants resist this conclusion with three arguments.

First, defendants offer an affidavit from Ralston, which they say is uncontroverted evidence that he had nothing to do with the motor vehicle crash. In the affidavit, Ralston explains that at the time of the motor vehicle crash, he "supervised a team of six separate safety professionals, many of whom in turn supervise subordinate employees." Dkt. 1-15, ¶ 2. Ralston

says that one of his job duties was to create general safety policies for ADS's fleet of vehicles. *Id.* ¶ 4.C. But Ralston did not hire, train, or supervise individual drivers, nor did he decide how to respond to specific weather events; those decisions were made by safety managers in ADS's regional offices. *Id.* ¶ 4.

Defendants argue that Ralston's affidavit puts this case on all fours with *Faucett*, in which the court of appeals found fraudulent joinder based on an uncontroverted affidavit establishing that a non-diverse defendant had "absolutely nothing to do" with the events that caused the plaintiff's injury. 960 F.2d at 655. The court disagrees. Even assuming that Ralston's affidavit is uncontroverted, it does not foreclose any possibility that Johnston could sustain a negligence claim against Ralston. The affidavit calls into question Johnston's theories that Ralston negligently trained Hill and that he failed to monitor the weather on the day of the crash, because the affidavit suggests that Ralston was not responsible for those tasks. But Johnston also advances a theory of negligence based on Ralston's failure to develop an adequate adverse weather policy for ADS. Ralston admits in the affidavit that he was responsible for ADS safety policies. That admission is consistent with Johnston's theory of negligence based on Ralston's failure to develop an adverse weather policy, so the affidavit does not establish that Ralston had "absolutely nothing to do" with the motor vehicle crash.

Second, defendants argue that Johnston's negligence claims against Ralston would be barred by public policy under Wisconsin law. Defendants rely on *Casper v. Am. Intern. S. Ins. Co.*, 800 N.W.2d 880 (Wis. 2011), in which a corporate officer at a trucking company was sued for negligence because he had approved the route that a truck driver took when he hit the plaintiff. The court found the plaintiff's claim against the corporate officer barred by public policy, because even if the officer had acted negligently, his actions were too remote from the

events leading to the truck crash. *Id.* ¶¶ 93–100. To reach this conclusion, the court observed that the corporate officer had approved the route at least a year and a half before the crash, that he had done so from an office in a different state, that he had not trained, supervised, or even met the driver involved, and, "most importantly," that the driver had been under the influence of multiple prescription medications at the time of the crash, which was a much more significant contributor to the crash than the corporate officer's actions. *Id.*

Defendants' public policy argument is a fair one. Like the corporate officer in *Casper*, Ralston was a high-level ADS employee located in a different state from where the motor vehicle crash occurred, whose only apparent connection to the crash is that he developed general safety policies governing ADS's fleet of vehicles. But in evaluating fraudulent joinder, the court must resolve uncertainties in both the facts and the law in plaintiff's favor. *Gibson*, 2022 WL 2713408, at *2. *Casper* is not so conclusive as to destroy any reasonable chance that a state court might rule in plaintiff's favor on the public policy issue. Whether a negligence claim is barred by public policy often turns on facts that can be developed only through discovery, so it is a difficult issue to resolve at the pleading stage. *See Coffey v. City of Milwaukee*, 247 N.W.2d 132 (Wis. 1976); *Bowen v. Lumbermens Mut. Cas. Co.*, 517 N.W.2d 432, 443 (Wis. 1994). It is not clear from the complaint what policies Ralston may have developed related to adverse weather or what contribution those policies played in the crash. So the court cannot conclude that a state court would necessarily dismiss the claim against Ralston on public policy grounds.

Third, defendants point to evidence that Johnston's motive in adding Ralston to the case was to prevent removal to federal court. Dkt. 63-1.[1] They explain that Johnston filed this lawsuit in state court only after voluntarily dismissing a similar lawsuit, which included all the same defendants except Ralston. And they point to the following email between counsel representing Johnston shortly before that lawsuit was dismissed.

> Baskin and William,
>
> David and I strongly recommend that the case that was recently filed be dismissed without prejudice as soon as possible. This complaint will almost certainly be removed to federal court prior to mediation, which would not be helpful to the likelihood of settlement.
>
> If the case does not settle at mediation, the case can be re-filed after giving due consideration to all possible means of pleading the case in a manner that would avoid diversity jurisdiction.
>
> This is our advice even though it appears under Wisconsin law that the case can only be voluntarily dismissed once.
>
> RICK G. DAVIS
>
> SHELTON DAVIS

Dkt 63-7, at 13.

Defendants' argument about Johnston's motive is foreclosed by the court of appeals' recent decision in *In re Abbott Laboratories, et al. Preterm Infant Nutrition Products Liability Litigation*, 184 F.4th 608, 610 (7th Cir. 2026). In that case, the district court found that a non-diverse defendant was fraudulently joined because plaintiffs had demonstrated "no real intention in good faith to prosecute the action" against that defendant, demonstrating that

[1] Defendants moved for leave to file a supplemental brief on this issue, explaining that the evidence of plaintiff's motive comes from a recent filing in a state court lawsuit involving the parties' counsel. Dkt. 63. The court will grant the motion and consider both the supplemental brief, Dkt. 63-1, and plaintiff's response to it, Dkt. 64.

their real motive was to defeat diversity jurisdiction. *Id.* at 613. The court of appeals reversed, holding that a plaintiff's motive for suing a particular defendant "is not an appropriate basis upon which to predicate a determination of fraudulent joinder." *Id.* at 610. *Abbott Laboratories* is controlling precedent in this circuit, and it compels the conclusion that Johnston's motive in suing Ralston is irrelevant to the fraudulent joinder analysis.

In sum, defendants have not met their "heavy burden" to show that Johnston has "no chance of success" on his negligence claims against Ralston. Ralston is undisputedly a forum defendant, so 28 U.S.C. § 1441(b)(2) bars removal. The court will remand this case to state court. It will deny the other pending motions as moot.

There is one final issue. In his motion to remand, Johnston requests fees and costs under 28 U.S.C. § 1447(c), which permits a district court remanding a case to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has interpreted this to mean that a court may award fees and costs only if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 138, 141 (2005). The court of appeals has provided further guidance, stating that a district court generally shouldn't award fees unless "clearly established law demonstrated that [the defendant] had no basis for removal." *Lott v. Pfizer, Inc.*, 492 F.3d 789, 793 (7th Cir. 2007).

Johnston hasn't met that standard. As already discussed, defendants had a reasonable ground to believe that Johnston's theory of negligence was barred by public policy under Wisconsin law. And *Abbott Laboratories* wasn't decided until after defendants removed the case, so it was also reasonable for defendants to believe that the evidence of Johnston's motive for

adding Ralston to the case would be relevant to whether there was fraudulent joinder. An award of fees and costs would not be appropriate here.

ORDER

IT IS ORDERED that:

1. Plaintiff Kenneth Tyson Johnston's motion to remand, Dkt. 39, is GRANTED.
2. Defendants' motion for leave to file a supplemental brief, Dkt. 63, is GRANTED.
3. Defendants' motions to dismiss, Dkt. 30, Dkt. 32, Dkt. 34, and Dkt. 48, are DENIED as moot.
4. The clerk of court is directed to REMAND this case to the Circuit Court for Dane County.

Entered September 9, 2026.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge